Dr. Mark HAYES, et al., Plaintiffs,

v.

Carol M. BROWNER, in her capacity as Administrator of the United States Environmental Protection Agency; et al., Defendants.

Oklahoma Wildlife Federation, an Oklahoma non-profit corporation, et al., Plaintiffs,

v.

Carol M. Browner, in her capacity as Administrator of the United States Environmental Protection Agency; et al., Defendants.

Nos. 97–CV–1090–BU, 99–CV–20–BU.

United States District Court, N.D. Oklahoma.

March 31, 2000.

Charles William Shipley, Jamie Taylor Boyd, Blake K Champlin, Shipley Jennings & Champlin, Tulsa, OK, Gerald Lynn Hilsher, Stoops Clancy & Hilsher, Tulsa, OK, for Mark Hayes, Ed Brocksmith, Oklahoma Wildlife Federation, Save the Illinois River, Inc.

Phil Pinnell, United States Attorney, Tulsa, OK, George Malone, III, U.S. Environmental Protection Agency, Office of Regional Counsel, Region VI, Dallas, TX, Michael G. Lee, U.S. Environmental Protection Agency, Office of Enforcement, Washington, DC, Eric G. Hostetler, U.S. Dept of Justice, Environment & Nat Res Div, Washington, DC, for Environmental

Protection Agency, Carol M. Browner, Jane Saginaw, Gregg A. Cooke, Jane Saginaw, Carol M. Browner.

### ORDER

BURRAGE, District Judge.

On January 26, 2000, United States Magistrate Judge Sam A. Joyner issued a Report and Recommendation, wherein he recommended that Plaintiffs' motion for summary judgment be denied and that Defendants' cross-motion for summary judgment be granted. In the Report and Recommendation, Magistrate Judge Joyner found that based upon the record before him, the State of Oklahoma had submitted and the Environmental Protection Agency ("EPA") had approved Total Maximum Daily Loads (TMDLs) prior to the filing of Plaintiffs' lawsuit. Because TMDLs had been submitted and approved, Magistrate Judge Joyner found that a constructive submission of "no TMDLs" by the State of Oklahoma had not occurred. Consequently, Magistrate Judge Joyner concluded that Plaintiffs had no cause of action under the Clean Water Act or under the Administrative Procedures Act for failure of the EPA to perform its non-discretionary duty to promulgate TMDLs. Magistrate Judge Joyner further concluded that Plaintiffs' challenges to the content of the EPA's actions in approving the TMDLs submitted by the State of Oklahoma had to be brought pursuant to Section 706(2)(A) of the Administrative Procedures Act. Because no such cause of action under Section 706(2)(A) had been brought against Defendants, as conceded by Plaintiffs, and no constructive submission of no TMDLs had occurred, Magistrate Judge Joyner found that summary judgment in favor of Defendants on Plaintiffs' claims under the Clean Water Act and the Administrative Procedures Act was appropriate.

This matter now comes before the Court upon Plaintiffs' Objection to Report and Recommendation of Magistrate Judge, or in the Alternative, Motion to Reconsider Portions of October 29, 1998 Order in Light of Magistrate Judge's Report and Recommendation. Defendants have responded to the objection and motion. Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the matter. Having done so, the Court rejects Plaintiffs' stated objections to the Report and Recommendation. The Court agrees with the analysis of Magistrate Judge Joyner and adopts the Report and Recommendation in its entirety.[1]

The Court also declines to reconsider portions of its October 29, 1998 Order as requested by Plaintiffs. The Court finds that Magistrate Judge Joyner's recommendation is consistent with the October 29, 1998 decision. In their Complaints, Plaintiffs alleged that no TMDLs had been submitted by the State of Oklahoma for 18 years and that Defendants' failure to act to establish TMDLs for the State of Oklahoma constituted arbitrary and capricious final agency action. In its October 29, 1998 Order, the Court dismissed Plaintiffs' claim, which had been brought pursuant to Section 706(2)(A) of the Administrative Procedures Act, because Plaintiffs had failed to identify any final action by Defendants relating to whether they should establish TMDLs. In the Report and Recommendation, Magistrate Judge Joyner found from the record presented that the State of Oklahoma had, in fact, submitted TMDLs for approval and that Defendants' action in approving the TMDLs had to be challenged by Plaintiffs under Section 706(2)(A) of the Administrative Procedures Act but that Plaintiffs had not brought such claim. The Court finds that Magistrate Judge Joyner's finding does not contradict the Court's finding that Plaintiffs

---

1. In the Report and Recommendation, Magistrate Judge Joyner additionally recommended that Defendants' Motion to Strike Plaintiffs' Expert Affidavit be granted. Magistrate Judge Joyner found that the affidavit submitted by Plaintiffs addressed issues not relevant to his decision. Plaintiffs have not objected to Magistrate Judge Joyner's recommendation, and therefore, the Court adopts Magistrate Judge Joyner's recommendation in regard to Defendants' motion.

cannot bring a Section 706(2)(A) claim for failure to act to establish TMDL's. As stated by Defendants, there is a difference between a claim that Defendants acted arbitrarily and capriciously in failing to act to establish TMDLs and a claim that Defendants acted arbitrarily and capriciously in approving the TMDLs submitted by the State of Oklahoma.

Contemporaneous with their objection, Plaintiffs have filed an Application for Leave to File First Amended Complaint. Plaintiffs seek leave to amend their Complaint to add a claim under Section 706(2)(A) of the Administrative Procedures Act to challenge Defendants' approval of the TMDLs submitted by the State of Oklahoma. Defendants have objected to the application.

 Rule 15(a), Fed.R.Civ.P., provides that leave to amend "shall be freely given when justice so requires." Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Tenth Circuit has held that untimeliness alone is a sufficient reason to deny leave to amend. *Viernow v. Euripides Development Corporation*, 157 F.3d 785, 799 (10th Cir.1998). Whether leave to amend should be granted is within the district court's discretion. *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

██ In the present case, Plaintiffs seek leave to amend over two years since the filing of the original Complaint and after Magistrate Judge Joyner has recommended that Defendants' motion for summary judgment be granted. The Court finds that Plaintiffs' application is untimely. The Court additionally finds that Plaintiffs have failed to provide sufficient justification for the undue delay.

In their application, Plaintiffs suggest that the delay in seeking leave to amend was caused by the delay of the filing of the administrative record and the subsequent position taken by Defendants in the summary judgment papers, based upon that administrative record, that the EPA had taken final agency action in regard to the State of Oklahoma's TMDL program. The Court, however, notes that the administrative record was produced to Plaintiffs in August of 1998, over 18 months ago. Clearly, Plaintiffs could have amended their Complaints before now.[2] The Court also notes that Defendants expressly advised Plaintiffs in their motion to dismiss to Plaintiffs' original Complaint that TMDLs had been submitted by the State of Oklahoma and had been approved by the EPA. They also advised that if Plaintiffs wished to pursue a claim regarding the EPA's decision to approve the TMDLs, they had bring such claim pursuant to the APA.

Plaintiffs represent that they are amending their Complaints merely to clarify the claims alleged against Defendants. The Court, however, finds that Plaintiffs are not clarifying their claims, but are alleging entirely new claims against Defendants.[3] As stated, Plaintiffs could have sought to amend the Complaints to allege these new claims long before now. The Court opines that Plaintiffs are seeking to advance claims that they previously could

---

**2.** The Court notes that Plaintiffs, Oklahoma Wildlife Federation and Save the Illinois River, Inc., re-filed their Complaint against Defendants after receipt of the administrative record. The Tenth Circuit has held that a motion to amend is subject to denial "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Las*

*Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185.

**3.** The Court notes that in their summary judgment papers, Plaintiff made clear that they were not seeking a review of the propriety of the EPA's approval of the TMDLs. However, in the proposed First Amended Complaint, Plaintiffs are seeking review of the propriety of the EPA's approval of the TMDLs.

have sought leave to advance simply because of Magistrate Judge Joyner's recommendation in regard to the primary claims. This situation is similar to that in *Viernow,* wherein the Tenth Circuit, upholding the district court's refusal to permit an amendment, stated "we do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery." *Viernow,* 157 F.3d at 800. In the instant case, the Court concludes that Plaintiffs should not be permitted to pursue new claims some eighteen months after the receipt of the administrative record and after a recommendation of summary judgment in favor of Defendants on Plaintiffs' primary claims. The Court therefore concludes that Plaintiffs' application for leave to amend should be denied.

Based upon the foregoing, the Report and Recommendation issued by United States Magistrate Judge Sam A. Joyner (Docket Entry # 74) is **AFFIRMED.** Plaintiffs' Motion for Summary Judgment (Docket Entry # 44) is **DENIED** and Defendant's Motion for Summary Judgment (Docket Entry # 49) is **GRANTED.** Defendant's Motion to Strike Plaintiffs' Expert Affidavit (Docket Entry # 48) is **GRANTED.** Plaintiffs' Motion to Reconsider Portions of October 29, 1998 Order in Light of Magistrate Judge's Report and Recommendation (Docket Entry # 77) is **DENIED.** Plaintiffs' Application for Leave to File First Amended Complaint (Docket Entry # 78) is **DENIED.** Judgment shall issue forthwith.

### *REPORT AND RECOMMENDATION*

JOYNER, United States Magistrate Judge.

Plaintiffs filed a motion for summary judgment on April 2, 1998. [Doc. No. 44–1]. Defendants filed a motion for summary judgment and a response to Plaintiff's motion for summary judgment on April 29, 1999. [Doc. No. 49–1]. The motions for summary judgment were re-ferred to the Magistrate Judge for report and recommendation on November 10, 1999.

Plaintiff asserts that, pursuant to the Clean Water Act ("CWA"), the Environmental Protection Agency ("EPA") has a nondiscretionary duty to promulgate Total Maximum Daily Loads ("TMDLs") for the state of Oklahoma due to the state's failure to promulgate and submit proposed TMDLs to the EPA. Defendants acknowledge the prior ruling of the Court on Defendants' Motion to Dismiss, finding that the CWA imposes certain duties and that prolonged state inaction can trigger those duties. However, Defendants assert that under the facts of this case Oklahoma has promulgated a sufficient number of TMDLs and that any mandatory EPA duties, imposed due to state inaction, have not been triggered.

The Magistrate Judge has thoroughly reviewed the briefs of the parties, the case law, and the supplemental authorities submitted by the parties. The Magistrate Judge concludes that under the facts as presented in this case, summary judgment in favor of the Defendant is appropriate. The Magistrate Judge recommends that Plaintiffs' motion for summary judgment be **DENIED** [doc. no. 44–1], and that Defendants' motion for summary judgment be **GRANTED.** [Doc. No. 49–1].

Defendants have additionally filed a Motion to Strike Plaintiffs' Expert Affidavit. [Doc. No. 48–1]. The Magistrate Judge recommends that the Motion be **GRANTED.**[1]

### I. FACTUAL BACKGROUND AND UNDISPUTED MATERIAL FACTS

The Environmental Protection Agency ("EPA") identified, in December 1978, the specific pollutants which were to provide the basis for the development by the states of TMDLs.[2] The parties agree that

---

1. Defendants assert that the affidavit submitted by the Plaintiffs' addresses issues not relevant to this Court's decision, The Magistrate Judge agrees. Consideration of the affidavit is not necessary with respect to the issues presented in this case.

2. "TMDL" refers to "Total Maximum Daily Load." Generally, TMDLs are the greatest amount of pollutant that a particular water body can receive on a daily basis without violating that state's water quality standards.

following the EPA's identification of pollutants in December 1978, each state was required to identify impaired waters and submit proposed TMDLs by June 26, 1979. Plaintiffs assert that each state was to submit a list of water quality limited segments ("WQLSs") and TMDLs. Defendants characterize the required submissions as "an identification of impaired waters and ... one or more TMDLs...." *See* Defendant's Brief, filed April 29, 1999 at 7.

The State of Oklahoma did not submit a WQLS List or proposed TMDLs by the June 26, 1979 deadline. EPA acknowledges that EPA did not promulgate a WQLS List or issue TMDLs for listed Oklahoma waters in 1979.

The CWA requires states to submit a "303(d) List"[3] from "time to time." 33 U.S.C. § 1313(d)(D)(2). In 1992 EPA promulgated regulations interpreting the statutes and requiring states to submit the 303(d) List on October 22, 1992, and, thereafter, on April 1 of even numbered years. *See* 40 C.F.R. § 130.7(d)(1).

Defendants and Plaintiffs acknowledge that Oklahoma did not submit a 303(d) List for the years 1980, 1982, 1984, 1986, 1988, or 1990. Defendants specifically point out, however, that Oklahoma was not required, prior to 1992, to submit such lists in even numbered years.

Oklahoma submitted its first 303(d) List in October of 1992. Oklahoma's 1992 List identified 60 WQLSs for TMDL develop-

ment within two years.[4] Oklahoma submitted no TMDLs prior to April 1, 1994. The EPA did not promulgate its own 303(d) List or issue TMDLs.

Oklahoma submitted a 1994 303(d) List sometime around July 7, 1994. The 1994 List contained approximately 68 WQLSs for which TMDLs were to be slated for development within two years.[5] The EPA approved the 1994 303(d) List on July 20, 1994. Oklahoma submitted a proposed TMDL for one of the WQLSs, but did not submit proposed TMDLs for the remaining WQLSs, for development within the next two years. EPA approved Oklahoma's submission. Plaintiffs contend that the EPA approval occurred although no public notice of the TMDL was given and although the TMDL did not meet the "requirements under 303(d)." *See* Plaintiff's Brief, filed April 2, 1999, at 11. Defendants disagree with Plaintiffs' characterization.

Plaintiffs and Defendants agree that no TMDLs or WQLSs were approved by the EPA prior to May 9, 1995.

Oklahoma submitted a 1996 303(d) List around June 3, 1996, which was approved by the EPA on June 24, 1996. The 1996 List identified 59[6] WQLSs. When the multiple water impairments are considered, the List amounts to approximately 1,588 TMDLs for development.

The first notice of intent to sue by Plaintiffs Mark Hayes and Ed Brocksmith was

---

3. Section 303(d) of the CWA is 33 U.S.C. § 1313(d). States are to identify and submit WQLSs and TMDLs.

4. Plaintiffs additionally note, and Defendants do not dispute, that several of the identified WQLSs had multiple impairments because the identified water failed to meet more than one applicable water quality standards. Plaintiffs note that the approximately 140 TMDLs were to be developed within two years of the 1992 303(d) List.

5. Plaintiffs assert that, considering multiple water impairments, the actual number of TMDLs for development over the next two years was approximately 429. Defendants as-

sert that the actual number is 164. The Court concludes that resolution of this factual dispute is unnecessary for the purpose of this summary judgment motion.

6. In "undisputed material fact number 30," Plaintiffs state that 579 WQLSs were identified in the 1996 List. Defendants do not dispute this "fact." Subsequent references to the 1996 List, however, list "59 WQLSs." *See* Undisputed Facts 32 and 34 in Plaintiffs' Brief filed April 2, 1999. The discussion of the 1996 List in the argument portion of Plaintiffs' Brief refers to 579. Determination of this issue is not necessary for the purpose of deciding Plaintiffs' and Defendants' motions.

served on the EPA on or about July 30, 1997. The lawsuit was filed December 11, 1997.

As of December 11, 1997, of the 59 WQLSs identified in the 1996 303(d) List, three TMDLs had been performed, submitted, and approved for WQLSs by the EPA. Plaintiffs assert that the approved TMDLs addressed limitations for dissolved oxygen standards (without addressing other impairments), were not approved within 30 days, and were not subject to appropriate public notice. Defendant disputes Plaintiffs' characterization.

Plaintiffs assert that although Defendants claim to have approved 22 TMDLs prior to receipt of Plaintiffs' Notice of Intent to Sue, none of the TMDLs met all statutory and regulatory requirements. Defendants dispute Plaintiffs' characterization. Plaintiffs assert that of the 29 TMDLs that Defendants claim to have approved prior to the filing of the lawsuit by Plaintiffs, none meet all statutory and regulatory requirements. Defendants dispute Plaintiffs' characterization.

EPA notes that their guidance documents provide that an expeditious schedule for state completion of TMDLs would normally extend from eight to thirteen years.

Oklahoma submitted and the EPA approved WQLSs in 1992, 1994, 1996, and 1998. Defendant asserts that between 1992 and 1999 the EPA has formally approved 15 TMDLs for WQLS. Defendant lists 15 TMDLs for pollutants of concern, and 32 TMDLs for state waters which Defendant asserts are approved. EPA additionally observes that Oklahoma has submitted two draft TMDLs which the EPA has technically approved. Plaintiffs state that they dispute that EPA has approved "a total of 49 TMDLs." Plaintiff's Combined Response Brief, filed June 11, 1999, at 7.

Defendants contend that although Oklahoma solicited public comment on the TMDLs, none of the Plaintiffs in this litigation elected to comment. Plaintiffs do not dispute that Plaintiffs did not comment upon the TMDLs. Plaintiffs claim that the notice given by Oklahoma of the proposed TMDLs was inadequate.

Oklahoma has committed to a schedule for establishing TMDLs for all WQLSs on the 1998 list over a period of 12 years. Oklahoma has proposed that it will complete up to 292 TMDLs by 1999, an additional 172 TMDLs by 2003, an additional 402 TMDLs by 2007, and an additional 576 TMDLs by 2010. Plaintiffs assert that Oklahoma will not keep the proposed schedule based on Oklahoma's history.

## II. STANDARD: MOTION FOR SUMMARY JUDGMENT

Summary judgment pursuant to Fed. R.Civ.P. 56 is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Windon Third Oil & Gas v. FDIC,* 805 F.2d 342 (10th Cir.1986).

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex,* 477 U.S. at 317, 106 S.Ct. 2548 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548; *Committee for the First Amendment v. Campbell* 962 F.2d at 1517.

To survive a motion for summary judgment, the nonmovant "must establish that there is a genuine issue of material facts...." *Matsushita v. Zenith,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "By its very terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The substantive law determines which facts are material. *Id.* And the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Zenith,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In addition, the evidence and inferences therefrom must be viewed in a light most favorable to the nonmoving party. *Conaway v. Smith,* 853 F.2d 789, 792 n. 4 (10th Cir.1988). Unless the moving party can demonstrate their entitlement beyond a reasonable doubt, summary judgment must be denied. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980).

In *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir.1992) (citations and footnotes omitted), the Tenth Circuit Court of Appeals summarized the standard for summary judgment.

> Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Factual disputes about immaterial matters are irrelevant to a summary judgment determination. We view the evidence in a light most favorable to the nonmovant; however, it is not enough that the nonmovant's evidence be "merely colorable" or anything short of "significantly probative." The movant need only point to those portions of the record which demonstrate an absence of a genuine issue of material fact given the relevant substantive law.
>
> A movant is not required to provide evidence negating an opponent's claim. Rather the burden is on the nonmovant, who "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." After the nonmovant has had a full opportunity to conduct discovery, this burden falls on the nonmovant even though the evi-

dence probably is in possession of the movant.

*Id.*

## III. CLEAN WATER ACT

### A. CLEAN WATER ACT

Congress passed the Federal Water Pollution Control Act, commonly referred to as the "Clean Water Act" ("CWA") in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The CWA provides, as one "enforcement mechanism" the right to private citizens to bring action in federal court when the EPA fails to perform a nondiscretionary act. 33 U.S.C. § 1365(a)(2).

This action primarily involves 33 U.S.C. § 1313(d) (Section 303 of the CWA). Subsection (d) provides:

> (1)(A) Each state shall identify those waters within its boundaries for which the effluent limitations required by section 1311(b)(1)(A) and section 1311(b)(1)(B) of this title are not stringent enough to implement any water quality standard applicable to such waters. The State shall establish a priority ranking for such waters, taking into account the severity of the pollution and the uses to be made of such waters.
>
> (B) Each State shall identify those waters or parts thereof within its boundaries for which controls on thermal discharges under section 1311 of this title are not stringent enough to assure protection and propagation of a balanced indigenous population of shellfish, fish, and wildlife.
>
> (C) Each State shall establish for the waters identified in paragraph (1)(A) of this subsection, and in accordance with the priority ranking, the total maximum daily load, for those pollutants which the Administrator identifies under section 1314(a)(2) of this title as suitable for such calculation. Such load shall be established at a level necessary to implement the applicable water quality standards with seasonal variations and a margin of safety which takes into ac-

count any lack of knowledge concerning the relationship between effluent limitations and water quality.

(D) Each State shall estimate for the waters identified in paragraph (1)(B) of this subsection the total maximum daily load required to assure protection and propagation of a balanced, indigenous population of shellfish, fish and wildlife. Such estimates shall take into account the normal water temperatures, flow rates, seasonal variations, existing sources of heat input, and the dissipative capacity of the identified waters or parts thereof. Such estimates shall include a calculation of the maximum heat input that can be made into each such part and shall include a margin of safety which takes into account any lack of knowledge concerning the development of thermal water quality criteria for such protection and propagation in the identified waters or parts thereof.

(2) Each state shall submit to the Administrator from time to time, with the first such submission not later than one hundred and eighty days after the date of publication of the first identification of pollutants under section 1314(a)(2)(D) of this title, for his approval the waters identified and the loads established under paragraphs (1)(A), (1)(B), 1(C), and (1)(D) of this subsection. The Administrator shall either approve or disapprove such identification and load not later than thirty days after the date of submission. If the Administrator approves such identification and load, such State shall incorporate them into its current plan under subsection (e) of this section. If the Administrator disapproves such identification and load, he shall not later than thirty days after the date of such disapproval identify such waters in such State and establish such loads for such waters as he determines necessary to implement the water quality standards applicable to such waters and upon such identification and establishment the State shall incorporate them into its current plan under subsection (e) of this section.

(3) For the specific purpose of developing information, each State shall identify all waters within its boundaries which it has not identified under paragraph (1)(A) and (1)(B) of this subsection and estimate for such waters the total maximum daily load with seasonal variations and margins of safety, for those pollutants which the Administrator identifies under section 1314(a)(2) of this title as suitable for such calculation and for thermal discharges, at a level that would assure protection and propagation of a balanced indigenous population of fish, shellfish, and wildlife.

33 U.S.C. § 1313(d).

Plaintiffs assert that certain EPA duties under the CWA are nondiscretionary. The District Court previously decided, with regard to Defendants' Motion to Dismiss, that the state has a duty to submit TMDLs, and that the failure to submit any TMDLs, over a period of time, could be considered a constructive submission of "no TMDLs," triggering the EPA's duty to promulgate TMDLs.

Plaintiffs assert that Oklahoma has either not submitted sufficient TMDLs, or the TMDLs submitted by Oklahoma do not comply with statutory and regulatory requirements. Plaintiffs assert that the EPA has therefore not complied with certain mandatory duties under the CWA, and Plaintiffs request that this Court order the EPA to develop TMDLs. Defendants assert that Oklahoma has submitted TMDLs which the EPA has approved. Defendants characterize Plaintiffs' arguments as challenging whether or not the EPA's approval of the TMDLs was arbitrary and capricious, and assert that such a challenge is not appropriate under the CWA.

**B. SUBMISSION AND APPROVAL OF TMDLs**

Plaintiffs claim that Oklahoma's failure to submit required TMDLs has triggered the EPA's duty to act. Plaintiffs note that the initial deadline to submit the 303(d)

List and TMDLs was June 26, 1979, and Plaintiffs did not submit the required lists in 1980, 1982, 1984, 1986, 1988, or 1990. Plaintiffs note that Oklahoma's first action did not occur until October of 1992. Plaintiffs acknowledge that Oklahoma submitted and the EPA approved 303(d) Lists in 1992, 1994, and 1996. Plaintiffs assert that the first TMDL submission by Oklahoma was approved by the EPA on August 23, 1995. Defendants assert that, over the past five years, Oklahoma has submitted and the EPA has approved 47 TMDLs.

Plaintiffs initially claim that Oklahoma failed to submit any TMDLs for over 13 years. Plaintiffs assert that, pursuant to case law, the failure to submit any TMDLs for 13 years triggered the mandatory duty by the EPA to establish TMDLs.

Assuming that the failure to act over a 13 year period is sufficient evidence of inactivity to trigger the mandatory duties of the EPA, such a situation does not accurately describe the current situation. The lack of activity with regard to WQLSs ceased in 1992 when Oklahoma submitted its first 303(d) List. The lack of activity with regard to TMDLs ceased in 1995 when Oklahoma submitted and EPA approved TMDLs.[7] Within their initial argument, however, Plaintiffs do not address the fact that Oklahoma submitted and the EPA approved TMDLs prior to the filing by Plaintiffs of this action.[8] Plaintiffs submit no cases discussing a 13—16 year failure to submit TMDLs, followed by submission of TMDLs, followed by a lawsuit. Plaintiffs cannot establish that Oklahoma has submitted "no TMDLs."

Plaintiffs refer the Court to *Scott v. City of Hammond*, 741 F.2d 992 (7th Cir.1984).

In *Scott*, the Plaintiff challenged the EPA under the CWA for the EPA's failure to prescribe TMDLs for the discharge of pollutants into Lake Michigan and for ensuring that water quality standards complied with the CWA. The Court noted the difference between a suit brought pursuant to the CWA and one brought under the Administrative Procedures Act ("APA"). "The only recognized avenue for challenge to the substance of EPA's actions taken with respect to state submissions is a suit for judicial review under the Administrative Procedure Act." *Id.* at 995. The Court initially concluded that the Plaintiff had not brought a claim pursuant to the APA, noting that such a claim generally challenged an agency action as arbitrary, capricious, or an abuse of discretion. With regard to the required submission of TMDLs, the Court noted that the statutes required submission within 180 days of the EPA's identification of pollutants, and that the states involved in the lawsuit "have not as yet submitted proposed TMDLs." *Id.* at 996, n. 10. The Court concluded that "if a state fails over a long period of time to submit proposed TMDL's, this prolonged failure may amount to the 'constructive submission' by that state of no TMDL's." *Id.*

This conclusion, by the Seventh Circuit Court of Appeals, is the same conclusion reached by the District Court in deciding the Motion to Dismiss in this case. The Seventh Circuit Court of Appeals remanded the action to the district court. The Seventh Circuit concluded that "if the district court agrees with our analysis that in this case the delay by the states may

---

**7.** Although the parties disagree on the exact number of TMDLs, at least three TMDLs were submitted and approved, with as many as 22 or 29 being approved by the EPA prior to Plaintiffs filing the lawsuit against the EPA in 1997. Defendant asserts that the EPA has approved 47 TMDLs in the past five years which have been submitted by Oklahoma.

**8.** Plaintiffs do assert that TMDL activity after the filing of this action cannot be considered by this Court. Plaintiffs refer the Court to the

unpublished decision of the Special Master in *Clifton, supra*. Defendants assert that courts routinely consider post-complaint TMDL activity, and refer the court to *Scott v. City of Hammond*, 741 F.2d 992, 997 (7th Cir.1984), n.11; *Sierra Club v. Browner*, 843 F.Supp. 1304, 1313 (D.Minn.1993); *Sierra Club v. Hankinson*, 939 F.Supp. 865, 872 (N.D.Ga.). Defendants additionally point out that the Special Master in *Clifton* suggested that post-lawsuit submissions could be considered evidence of "continuing progress."

amount to the 'constructive submission' of no TMDL's, then the EPA would be under a duty to either approve or disapprove the 'submission.' If the EPA approves ... the next step for a dissatisfied party would be to seek judicial review of the EPA's action. If the EPA disapproves, it then presumably would be under a mandatory duty to issue its own TMDL's." *Id.* at 996. The Seventh Circuit additionally, in a footnote, observed that:

> There may be reasons, wholly unknown to us at this time, which may justify the states' failure to submit TMDL's and the EPA's concomitant failure to act. However, on remand, the district court may order the EPA to proceed as if the states had submitted proposals of no TMDL's *unless the EPA promptly comes forward with persuasive evidence indicating that the states are, or will soon be, in the process of submitting TMDL* proposals or that some factor beyond the scope of the complaint has made TMDL submissions impracticable.

*Id.* at 996 (emphasis added).

■ *Scott* does support Plaintiffs argument that the total refusal by a state to submit any TMDLs can be considered a "constructive submission" of no TMDLs and therefore trigger the EPA's duty to act. However, in *Scott*, unlike the case presently before the Court, the states involved submitted *no* TMDLs. Although Plaintiffs assert that the TMDLs submitted by Oklahoma are inadequate, do not comply with the regulations, and were improperly approved, Plaintiffs acknowledge that Oklahoma has submitted some "TMDLs." Further, in *Scott*, the Seventh Circuit specifically pointed out that if the delay constitutes a constructive submission

of "no TMDLs" by the state, the EPA then has a duty to approve or disapprove the constructive submission. *Scott* notes that *if* the EPA approved the constructive submission of "no TMDLs," the next step for the aggrieved party was to seek judicial review, pursuant to the APA, of the EPA's actions. *Id.* at 996. Therefore, even if the EPA improperly approves invalid TMDLs, the appropriate action is a case brought pursuant to the APA, not under the CWA. Finally, *Scott* also contemplates submission of TMDLs after the initiation of a lawsuit under the CWA. *Id.* at 996, n. 11 ("the district court may order the EPA to proceed as if the states had submitted proposals of no TMDL's unless the EPA promptly comes forward with persuasive evidence indicating that the *states are or will soon be,* in the process of submitting TMDL proposals ....") (emphasis added).

Plaintiffs additionally refer the Court to *Sierra Club v. Hankinson,* 939 F.Supp. 865, 871 (N.D.Ga.1996). In *Hankinson,* the Plaintiff sued under both the CWA and the APA. The Court addressed the Plaintiff's arguments under the CWA and the APA, and the case is decided, at least in part, under the APA.

> The Court concludes that EPA's approval of Georgia's totally inadequate TMDL submissions and schedule for submissions of TMDLs is arbitrary and capricious in violation of the Administrative Procedures Act and, therefore, plaintiffs are entitled to summary judgment on the total maximum daily load issue.

*Id.* at 867. The arbitrary and capricious language certainly suggests that the Court considered the Plaintiff's claims pursuant to the APA.[9] Plaintiffs, in the action pres-

---

9. Plaintiffs assert that *Hankinson* was decided under the CWA. Certainly some of the language in *Hankinson* suggests that the court decided the action, in part, under the CWA. The *Hankinson* court observes that the CWA requires states to submit TMDLs for all WQLSs, that sixteen years passed before Georgia submitted its first TMDL; that Georgia developed only two TMDLs and both were submitted after the filing of the action; that the TMDLs violated numerous requirements

of § 303(d); that Georgia had no plans to develop additional TMDLs for all WQLSs; and that under Georgia's "planned" development, the institution of TMDLs would take over one hundred years from beginning to completion. The Court concluded that the EPA's "failure to disapprove of Georgia's inadequate TMDL submissions was arbitrary and capricious in violation of the Administrative Procedure Act and that EPA's failure to

ently before the Court, agree that they are presenting an action under the CWA, not the APA,[10] and Plaintiffs' focus is on the EPA's failure to comply with its mandatory duties pursuant to the CWA. Furthermore, in *Hankinson,* the court specifically found that the constructive submission analysis was not appropriate because the state had made some TMDL submissions, "albeit totally inadequate" submissions. *Id.* at 872, n. 6.

Plaintiffs also rely on *Alaska Center for the Environment v. Reilly (ACE I),* 762 F.Supp. 871 (N.D.Ga.1996). In *ACE I,* the parties did not dispute that ten years passed and the state submitted no TMDLs to the EPA and the EPA took no action. After the citizen suit was filed, the state submitted a list of WQLSs (but no TMDLs) to the EPA. The EPA took no action. The Plaintiffs contended that the failure of Alaska to submit any TMDLs constituted a constructive submission triggering the EPA's duty to act. The EPA asserted that the EPA had no duty to act absent an actual submission by the state. The court concluded that the EPA was required to act when the states' actions indicated that the state refused to act. *ACE I* certainly supports Plaintiffs' positions with regard to the motion to dismiss.

The case does not add much, however, to their position with regard to the motion for summary judgment. The state, in *ACE I,* had submitted *no* WQLSs or TMDLs prior to the filing of the action. After the filing of the action, the state submitted a list of WQLSs, but not TMDLs.

Plaintiffs additionally submitted an unpublished case for the Court's consideration. *Sierra Club* et al. *v. Clifford* et al., Report of the special Master, No. 96–0527, 1998 WL 1032129 (E.D. La. Sept. 22, 1998), submitted by Plaintiffs on June 30, 1998 [Doc. No. 13–1] "Plaintiffs' Advice to the Court Regarding Recent Court Ruling." The Special Master in *Clifford,* however, specifically limits a portion of his review to the APA.

Rejection of the plaintiffs' nondiscretionary duty and unreasonable delay claims does not mean that EPA's approvals are immune from judicial scrutiny. Although the judicial review of the Clean Water Act, 33 U.S.C. § 1369(b), is not applicable to EPA approval of state submissions under 303(d), an approval is "final agency action" reviewable under the Administrative Procedure Act, 5 U.S.C. § 704, to determine if the actions [sic] is "arbitrary, capricious, or an abuse or [sic] discretion or otherwise not

promulgate TMDLs for Georgia violates the Clean Water Act." *Id.* at 872. Clearly, at least a portion of the court's decision is pursuant to the APA. This Court is not convinced that the *Hankinson* court's decision with regard to the failure to promulgate TMDLs is truly based solely on a CWA action with regard to mandatory duties imposed on the EPA. (As noted by Defendants, a cause of action may be brought pursuant to the CWA or the APA, but not both.) However, assuming that the TMDL portion of the *Hankinson* court's decision was decided solely as a CWA case, the record in *Hankinson* indicated that no TMDLs were submitted for sixteen years prior to the initiation of the lawsuit; after the initiation of the lawsuit two TMDLs were submitted; and the "planned" completion of the proposed TMDLs would take 100 years. Each of these factors contrasts with the facts presented to this Court.

10. Defendants devote a portion of their brief to discussing Plaintiff's remaining APA claim.

(Defendants note Plaintiffs' sole remaining APA claim is pursuant to 706(1) of the APA and involves nondiscretionary duties.) Defendants argue that summary judgment must be granted in favor of Defendants on this claim. Defendants assert that Plaintiffs, under this portion of their APA argument, must prove that a mandatory legal requirement or nondiscretionary duty under the CWA has not been performed. Defendants assert that, pursuant to their arguments related to Plaintiffs' CWA case, Plaintiffs cannot prove the existence of such a duty. Defendants additionally argue that a party may not bring duplicative causes of action under the CWA and the APA. Plaintiffs do not respond to this portion of Defendants' argument. Assuming Plaintiffs are pursuing a limited APA claim, the analysis of Plaintiff's cause of action on this limited claim would not substantially differ from the Court's discussion on EPA's mandatory duties under the CWA. Plaintiffs have not established a mandatory duty that the EPA has failed to perform.

in accordance with law or if the agency has failed to follow procedures required by law."

*Id.* at 19–20 (citations omitted). With regard to the submissions by the state of TMDLs and the subsequent actions of the EPA, the Special Master initially considers and recommends action by the Court under the citizen suit provision of the CWA. The Special Master wrote that the EPA approved 15 TMDLs, all after the filing of the lawsuit, and that the state's duty to identify the waters and propose TMDLs arose 20 years prior to its first submission. The Special Master additionally observed that the state had submitted 15 TMDLs pertaining to a list of 255 waters, and that seven of the 15 TMDLs related to waters that were not included in the 1996 identification of water segments.[11]

Defendants refer the court to *Sierra Club v. Browner,* 843 F.Supp. 1304 (D.Minn.1993). The EPA asserted that it had approved 43 TMDLs, but the plaintiffs argued that the approved TMDLs were not valid. The plaintiffs contended that the EPA had ignored its mandatory duties by approving only a handful of TMDLs. The court observed that unlike cases finding a "constructive submission" of no WQLSs or TMDLs, the state had submitted WQLSs. "On this record, it would be inappropriate to find that the State has made a constructive submission of a WQLS list requiring the Administrator's action." The court concluded that "[a]lthough Minnesota and the EPA may not be implementing TMDLs as quickly as plaintiffs would like, the Act does not set deadlines for the development of a certain number of TMDLs. The Act instead requires the development of TMDLs 'in accordance with the priority ranking' of the WQLS list. A finding of submission of no TMDLs would therefore be inappropriate on this record." *Id.* at 1314.

Defendants additionally submitted an unpublished case in support of their position. In *Friends of the Wild Swan, Inc.* et al. *v. U.S. Environmental Protection Agency,* et al., unpublished decision (D.Mo. Nov. 5, 1999), submitted by Defendants on November 15, 1999, [Doc. No. 67–1], the parties agreed that the state had submitted WQLS Lists which did not contain all of the states WQLSs and that the state had not yet developed TMDLs for all of the WQLSs identified. The court noted that 3,000 TMDLs needed to be developed for the 1998 303(d) List. The court concluded that the only two mandatory duties imposed on the EPA were to review the submission of WQLSs or TMDLs within 30 days, and if the EPA disapproved of the submissions, to identify and develop appropriate WQLSs and TMDLs. "If the EPA approves an inadequate submission WQLSs or TMDLs, a plaintiff may properly challenge the approval under section 706(2)(A) of the APA on the basis that the approval was arbitrary and capricious." *Id.* at 12–13.

Plaintiffs' argument is premised on case law which supports the conclusion that a court can order the EPA to act when the court finds that the state has submitted "no TMDLs." In this case, Plaintiffs argue that "no TMDLs" were submitted prior to 1995. However, after 1995, the record indicates that TMDLs were submitted by Oklahoma and approved by the EPA.[12] Because TMDLs were submitted and approved prior to the filing of the lawsuit by Plaintiff, the Court cannot find that the state of Oklahoma has entirely failed to submit TMDLs. In addition, if the Court were merely to order the EPA to "act," based on a finding of no submissions prior to 1995, the EPA's actions could, presumably, simply constitute the EPA actions of the past four years—approving the submitted TMDLs. The Court therefore

11. Plaintiffs contend that Oklahoma took no action for 16 years; that only three TMDLs had been completed prior to the filing of the lawsuit; that only 29 TMDLs had been proposed (for 1,588 WQLSs) prior to the filing of the lawsuit, and only three of those 29 related to 303(d) List waters.

12. The specific number of TMDLs submitted or approved is disputed.

finds that, based on the record submitted by the parties, a finding of "no TMDL" submissions cannot be made. This is in accord with *Sierra Club* et al. *v. Clifford* et al., Report of the Special Master, No. 96–0527, unpublished decision (E.D. La. June 24, 1998),[13] which is discussed above. The Special Master noted that the citizen suit provision under the EPA applies only when the EPA fails to perform a nondiscretionary duty, and "a subsequent approval of the state's submissions cured the previous failure to act." *Id.* at 17—19. Also in accord is *Friends of the Wild Swan, Inc.* et al. *v. U.S. Environmental Protection Agency,* et al., unpublished decision (D.Mo. Nov. 5, 1999).[14] The Court noted that "The constructive submission theory does not apply when the EPA approves a state's submissions of WQLSs and TMDLs prior to the commencement of the citizen suit, even if the submissions are obviously inadequate." *Id.*

### C. MANDATORY REQUIREMENTS UNDER THE CWA

Plaintiffs recognize that the citizen act provisions under the CWA apply to only mandatory duties on the part of the EPA. Plaintiffs refer to several mandatory duties which Plaintiffs claim the EPA has not fulfilled.

Plaintiffs note Section 303(d)(1)(C) which requires each state to submit TMDLs. This provision imposes a mandatory duty *upon the state* to submit the TMDL. However, read in conjunction with 303(d)(1)(D)(2), the EPA does have a mandatory duty if the state fails to submit any TMDLs. Courts have imposed a duty on the EPA to act upon a finding of a constructive submission of "no TMDLs." Section 303(d)(1)(D)(2) requires the state to submit to the Administrator TMDLs pursuant to Section 303(d)(1)(C). The duty upon the Administrator is to either approve or disapprove the TMDLs not later than 30 days after submission, and if the Administrator disapproves the TMDL, to promulgate TMDLs. These mandatory requirements and the EPA's actions with regard to them are discussed above. Generally, the Magistrate Judge concludes that a constructive submission of "no TMDLs" has not occurred, and EPA complied with mandatory duties under the Act to approve or disapprove submitted TMDLs.

Plaintiffs refer to 40 C.F.R. § 130.7(d)(1)(ii) as imposing a mandatory duty that the TMDL shall be subject to public review. Plaintiffs assert that the EPA failed to provide notice identifying the development of proposed TMDLs.

■ The provision referenced by Plaintiff provides:

(c) Development of TMDLs and individual water quality based effluent limitations.

(1) Each State shall establish TMDLs for the water quality limited segments identified in paragraph (b)(1) of this section, and in accordance with the priority ranking. For pollutants other than heat, TMDLs shall be established at levels necessary to attain and maintain the applicable narrative and numerical WQLS with seasonal variations and a margin of safety which takes into account any lack of knowledge concerning the relationship between effluent limitations and water quality. Determinations of TMDLs shall take into account critical conditions for stream flow, loading, and water quality parameters.

(i) TMDLs may be established using a pollutant-by-pollutant or biomonitoring approach. In many cases both techniques may be needed. Site-specific information should be used wherever possible.

(ii) TMDLs shall be established for all pollutants preventing or expected to

---

**13.** This report was submitted by Plaintiffs on June 30, 1998 [Doc. No. 13–1] "Plaintiffs' Advice to the Court Regarding Recent Court Ruling."

**14.** This decision was submitted by Defendants on November 15, 1999. [Doc. No. 67–1].

prevent attainment of water quality standards as identified pursuant to paragraph (b)(1) of this section. *Calculations to establish TMDLs shall be subject to public review as defined in the State CPP.*

40 C.F.R. § 130.7(c)(1)(ii) (emphasis added). The provision does provide that the TMDL shall be subject to public review. It does not specify that such a duty is imposed on the EPA. The EPA approved the TMDLs. Plaintiffs can challenge the EPA's approval of the TMDLs as arbitrary and capricious under the APA due to the lack of the required notice.[15]

Plaintiffs refer to numerous sections from Section 303(d) providing that each State should identify waters, establish priority rankings, establish TMDLs for identified waters, and submit to the Administrator. Plaintiffs state that the term "shall" which is repeatedly used throughout the regulations imposes mandatory duties on the EPA. However, as Defendants point out, each of the mandatory duties referenced by Plaintiffs are imposed by the Act on the "State," not the EPA. The EPA has the duty to approve or disapprove the State submissions. In this case, the EPA has approved the submissions, and the remaining issue is whether or not that approval was arbitrary and capricious—which is a decision left for an APA action.

### D. APPROVED TMDLs DO NOT MEET MINIMUM REQUIREMENTS

Plaintiffs note that Defendants purport to have approved 29 TMDLs prior to commencement of the lawsuit. Plaintiffs assert that the 29 TMDLs do not comply with the minimum legal requirements for TMDLs and therefore are not TMDLs. Plaintiffs note that some TMDLs were proposed for water segments which were not identified as WQLSs. Plaintiffs assert that some TMDLs were proposed for impaired water segments, but that the proposed TMDLs did not address the specific impairment. Plaintiffs assert that the public notice requirements for the proposed TMDLs were not met. Plaintiffs additionally contend that the proposed TMDLs were not in accordance with priority ranking, and that the EPA did not approve the majority of the TMDLs within the requisite 30 days. Plaintiffs therefore assert that the "TMDLs" submitted by Oklahoma and approved by the EPA are not valid TMDLs. Supposedly, Plaintiffs are therefore asserting that because the TMDLs are not valid, Oklahoma's submission of them and EPA's approval essentially constitutes "no action" and triggers EPA's mandatory duty to act.

■ Plaintiffs do not refer the Court to any unpublished cases in which the EPA's approval of TMDLs which did not specifically comply with the requirements of the CWA was found, by a court, to constitute "no submissions" pursuant to a challenge to the EPA under the CWA.[16] As noted in

15. The Court makes no finding with regard to whether or not the notice was required or was or was not properly given.

16. Plaintiffs do refer the Court to the Special Master's Report which was adopted by the District Court in *Sierra Club v. Clifford*, 1998 WL 1032129 (E.D.La. Sept.22, 1998), adopting *Sierra Club* et al. *v. Clifford* et al., Report of the Special Master, No. 96–0527, unpublished decision (E.D. La. June 24, 1998), submitted by Plaintiffs on June 30, 1998 [Doc. No. 13–1] "Plaintiffs' Advice to the Court Regarding Recent Court Ruling." The Court has reviewed the Special Master's Report. Initially, the facts, although somewhat similar, differ from the facts submitted to this Court. (The Special Master noted that *no* TMDLs had been submitted prior to the filing

of the lawsuit). Further, the Court is not persuaded by the reasoning of the Special Master in *Sierra Club v. Clifford,* that the appropriate proceeding was pursuant to the CWA rather than the APA. As noted by the Seventh Circuit Court of Appeals in Scott, *if* the EPA approves a constructive submission of "no TMDLs," the next step for the aggrieved party would be to seek judicial review, pursuant to the APA, of the EPA's actions. *Scott,* 741 F.2d 992, 996. Therefore, even if the EPA improperly approves invalid TMDLs, or approves a submission of "no TMDLs," *Scott* suggests that the appropriate action is to file an action pursuant to the APA. In addition, the Special Master in *Clifford* does observe that if the action was not appropriate under the CWA it could still have been appropriately construed under the APA. *Sierra*

several cases cited by Plaintiffs and Defendants, inquiries into the TMDL approval process by the EPA necessarily entail determining whether or not the EPA's actions were arbitrary and capricious. Such an inquiry is not appropriate under the CWA, but is the subject of an APA suit which Plaintiffs agree they have not brought.

Plaintiffs continually assert that Plaintiffs are not contending that the approved TMDLs are "bad" TMDLs, or that they are improper. Plaintiffs contend that instead the TMDLs submitted (and approved) are not TMDLs because they do not meet the requirements under Section 303(d). However, the EPA has already concluded that the "TMDLs" referenced by Plaintiffs are actual TMDLs. Concluding, with Plaintiffs that the "TMDLs" did not meet the legal requirements necessarily requires a review of the EPA's decision-making. Although Plaintiffs' wording of the argument may have some appeal, determining whether or not the submitted and approved "TMDLs" really are "TMDLs" requires the Court to review something that the EPA has actually approved. Such an evaluation is appropriately left to an APA action.

### E. NUMBER OF TMDLs APPROVED

Plaintiffs contend that even if the improper TMDLs submitted by Oklahoma and approved by the EPA would be considered valid, because Oklahoma has submitted only a small portion of required TMDL's, Oklahoma has not sufficiently complied with the requirements to promulgate TMDLs. Plaintiffs assert that the 1996 303(d) List contains 579 WQLSs, which would lead to the development and completion of 1,588 TMDLs. Plaintiffs contend that prior to the filing of this lawsuit Oklahoma had submitted only nine TMDLs. Plaintiffs note that, at most, Oklahoma has developed 49 TMDLs. Plaintiffs assert that "a little bit of compli-

ance" is simply insufficient. Plaintiffs rely on *Sierra Club v. Hankinson,* 939 F.Supp. 865, 871–71 (N.D.Ga.1996), and *Idaho Sportsmen's Coalition v. Browner,* 951 F.Supp. 962, 967 (W.D.Wash.1996).

In *Hankinson,* as discussed above, the state of Georgia submitted two TMDLs after the filing of the lawsuit against the EPA. The court additionally noted that the state had no "current plans to develop TMDLs for all WQLSs," and that if the state's pace of development was followed completion of TMDLs would take over 100 years. The facts of *Hankinson* are different from the facts presently before this Court. Oklahoma submitted several TMDLs which were approved by the EPA prior to the filing of the action, and EPA asserts that Oklahoma has committed to establish all TMDLs over the next 12 years. Furthermore, as noted above, *Hankinson* was decided, in part, under the APA.

Plaintiffs additionally refer to *Idaho Sportsmen's Coalition v. Browner,* 951 F.Supp. 962 (W.D.Wash.1996). In *Idaho,* the plaintiff sued pursuant to the CWA and the APA. Idaho submitted no WQLS to EPA until 1989, and the EPA never approved or disapproved the 1989 list. Idaho submitted a second WQLS list in 1992 which was approved by the EPA one year later. The *Browner* court concluded in a prior decision in the same action in 1994, that the EPA's decision was contrary to law and directed the EPA to promulgate a WQLS List for Idaho. In 1995, the plaintiff and defendant moved for summary judgment on the TMDL issue. The court directed the EPA and the state of Idaho to cooperate in completing a TMDL schedule. EPA moved to dismiss the case in 1996, asserting compliance with the court order. The proposed TMDL schedule called for completion of the TMDL process over a period of 25 years, although

*Club* et al. *v. Clifford* et al., Report of the Special Master, No. 96–0527, ("Even if one accepts EPA's argument that its duties under Section 303(d) are not specific enough to sup-

port a citizen suit, the Sierra Club is still entitled to relief. The Administrative Procedure Act allows a court to compel agency action 'unreasonably delayed.' ").

the court noted that all necessary TMDL development would still not occur in that 25 year time frame unless hundreds of WQLSs "fell off the list." In considering the EPA's proposal, the court concluded that completion of the program could easily take 75 years. The court decided in favor of the plaintiff, but did so under the APA.

[T]he plaintiffs have sued under both the CWA and the APA. Under the CWA, the EPA has a mandatory duty, if it disapproves a state's TMDL submission, to establish the TMDLs itself within thirty days. Under the APA, the court may compel agency action unlawfully withheld or unreasonably delayed, and a discretionary act may be set aside if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Here, the EPA's approval of Idaho's proposed TMDL schedule is arbitrary, capricious, and an abuse of discretion.

*Id.* at 967.

### F. OTHER TECHNICAL DEFICIENCIES

Plaintiffs assert that numerous other problems exist with the EPA's approval of the TMDLs. According to Plaintiffs, the statutes require consideration of seasonal variations in setting a TMDL and the EPA considered only low flow conditions in approving Oklahoma's TMDLs. Plaintiffs also assert that the EPA was required to consider non-point sources, but did not. Plaintiffs contend that the approved TMDLs are not "daily" loads as required by the statute, and that Oklahoma has not properly incorporated approved TMDLs into their water management plans.

Plaintiffs assert that it is axiomatic that the EPA has no authority to approve TMDLs which do not meet statutory or regulatory guidelines, and that the TMDLs approved by the EPA do not meet such guidelines.

Defendants argue that the sole issue under a CWA action and the "constructive submission" doctrine is limited to whether EPA had a duty to review the state's determination to submit "no TMDLs." EPA asserts that because Oklahoma has submitted some TMDLs, the Court cannot find that there has been a decision by the state of Oklahoma to submit no TMDLs. Defendant asserts that Plaintiffs are actually challenging the content of the EPA's actions in approving the TMDLs submitted, and that such an action must be brought pursuant to the APA. The Court agrees.

■ Plaintiffs refer the Court to no published cases decided solely under the CWA where a court has ordered the EPA to act to promulgate TMDLs when the state has submitted TMDLs—although the submitted TMDLs may be questionable.[17] Defendant refers to *Browner*, 843 F.Supp. at 1314 (constructive submission of no TMDLs inappropriate where state submitted TMDLs and EPA approved them); *Scott*, 741 F.2d at 997–98 (constructive submission inquiry limited to review of state determination to submit no TMDLs). Defendants also reference *Kennecott Copper Corporation v. Costle*, 572 F.2d 1349 (9th Cir.1978) as holding that citizen suits under the CWA were intended to provide relief in a very narrow range of situations in which the EPA failed to perform mandatory duties.

Plaintiffs are, again, challenging specifics related to the EPA's approval of Oklahoma's proposed TMDLs. The decision by EPA to approve TMDLs which may be improper or which may not comply with statutory requirements is reviewable pursuant to the APA, not the CWA.

Defendants additionally challenge the Plaintiffs' assertions that the approval of the TMDLs did not comply with the numerous requirements listed by Plaintiffs. The Court declines to address this argu-

---

**17.** Plaintiffs assert that the TMDLs do not comply with the CWA and therefore are inap- propriate.

ment. The Court concludes that determining whether or not the EPA properly approved the TMDLs is appropriate only in a suit brought pursuant to the APA. Plaintiffs have not alleged such a cause of action, and therefore review of the EPA's action, at this time, would be inappropriate.

## RECOMMENDATION

The Magistrate Judge recommends that the District court DENY Plaintiffs' motion for summary judgment, and GRANT Defendants motion for summary judgment. In addition

Defendants have additionally filed a Motion to Strike Plaintiff's Expert Affidavit. [Doc. No. 48–1]. The Magistrate Judge recommends that the Motion be **GRANTED.**

## OBJECTIONS

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); and *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).

Jan. 26, 2000.