**SAN FRANCISCO BAYKEEPER, INC., et al., Plaintiffs,**

v.

**Carol BROWNER, et al., Defendants.**

**California Association of Sanitation Agencies, et al., Plaintiffs,**

v.

**Carol Browner, et al., Defendants.**

**Nos. C–00–0132–CAL, C–00–0424–CAL.**

United States District Court, N.D. California.

Feb. 22, 2001.

Thomas N, Lippe, Law Offices of Thomas N. Lippe, San Francisco, CA, Michael R. Lozeau, Earthlaw Environmental Clinic, Stanford, CA, Nora J. Chovrover, Law Offices of Nora J. Chovrover, Albany, Ny, Leo O'Brien, San Francisco, CA, for San Francisco Baykeeper.

David S. Beckman, Natural Resources Defense Council, Inc., Los Angeles, CA, for Natural Resources Defense Council, Inc.

Charles O'Conner, U.S. Attorney's Office, San Francisco, CA, Norman L. Rave, Jr., Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC, for Carol Browner, Felicia Marus, Environmental Protection Agency.

Jon K. Wactor, Luce Forward Hamilton & Scripps, San Diego, CA, for Industrial Environmental Association of San Diego, Building Industry Legal Defense Foundation, California Building Industry Association.

Margaret N. Rosegay, Pillsbury Winthrop LLP, San Francisco, CA, for Western States Petroleum Association.

## ORDER ON MOTIONS

LEGGE, District Judge.

### Introduction

The above entitled cases are two in a group of cases challenging the actions and

the inaction of the United States Environmental Protection Agency (the "EPA") in its regulation of waters of the United States in California. The above two cases have been consolidated, but the motions now before the court and this order specifically address the causes of action in C–00–0132.

Plaintiffs in C–00–0132 have moved to file a second amended complaint. The proposed amendment is not opposed, and IT IS THEREFORE ORDERED that plaintiff's proposed second amended complaint be filed. All further references in this order to plaintiffs' claims are to those in the second amended complaint (the "SAC").

Generally speaking, the plaintiffs in C–00–0132 are several public interest groups which "seek to remedy the failure of the EPA · to perform its non-discretionary duties to identify and restore water quality for polluted waters throughout the state of California." SAC ¶ 1. More specifically, the plaintiffs allege that the EPA has failed to discharge its non-discretionary duties under section 303(d)(2) of the Clean Water Act to establish total maximum daily loads of pollutants for water quality limited segments of waters of the United States located in California. *Id.*

Again generally speaking, the plaintiffs in C–00–0424 are public sanitation agencies and treatment works in California, acting through their associations. They allege that the EPA has violated both federal and state law by improperly approving submissions by the state of California to the EPA. The specific causes of action alleged in C–00–0424 are not identical to those in C–00–0132, nor is the relief sought identical. The cases are consolidated, but this order specifically discusses only the claims in C–00–0132.

The third action in this group of related cases is *Western States Petroleum Association v. Browner*, No. C–00–1815. That action is proceeding on a schedule separate from the above two consolidated cases, and this order makes no direct rulings on the cause of action in that case.

### The Pending Motions

The motions now before this court are the following, listed in the order of their filing: (1) Defendant's [1] motion for judgment on the pleadings regarding the third and fourth claims; however, the fourth claim has now been amended by the SAC. And this motion is for practical purposes subsumed within the motions for summary judgment. (2) Plaintiffs' motion for summary judgment. The motion seeks summary judgment on the issues of liability only, and it pertains to all four of plaintiffs' claims in the SAC. (3) Defendant's cross motion for summary judgment on all claims in the SAC.

The motions have been briefed, argued, and submitted for decision. The court has reviewed: the moving and opposing papers, the record of the case, the records submitted in support of and in opposition to the motions, the records of which this court can take judicial notice, and the applicable authorities. The court is resolving these motions under the standard of Rule 56 of the Federal Rules of Civil Procedure; that is, resolving issues of law and issues of fact where there is no genuine issue of material fact. The parties agree that the issues are primarily ones of law.

### The Statutory Framework

The United States has jurisdiction over waters within the states which are statutorily and judicially defined as "waters of the

---

**1.** There are several defendants, but all are connected with the EPA. For simplicity, the defendants are therefore referred to in this order in the singular and as "the EPA" or "defendant."

United States;" 33 U.S.C. § 1326. Acting pursuant to that jurisdiction, the Congress of the United States enacted the Clean Water Act of 1972 (the "CWA"). The objective of the CWA is to "restore and maintain the chemical, physical and biological integrity of the nation's waters." 33 U.S.C. § 1251(a). The CWA seeks to eliminate "the discharge of pollutants into navigable waters" and to attain "water quality which provides for the propagation of fish, shellfish, and wildlife and provides for recreation in and on the water." 33 U.S.C. § 1251(a)(1),(2).

These suits specifically concern section 303(d) of the CWA; 33 U.S.C. § 1313(d). That section requires the states to identify waterbodies within their boundaries that do not meet water quality standards, and to establish a priority for ranking those polluted waterbodies based on the severity of the pollution and the type of use of that waterway. 33 U.S.C. § 1313(d)(1)(A). The regulations use the term "water quality limited segments" (WQLSs) to identify such waters. See 40 C.F.R. § 130.2(j).

Section 303(d) requires each state to determine how much of a pollutant a WQLS can endure before its quality becomes impaired. This determination is known as the Total Maximum Daily Load ("TMDL") calculation. The TMDL calculation must be made on a waterbody-specific and a pollutant-specific basis wherever a pollution problem has been identified and other regulatory approaches are not resolving the problem. The TMDL contemplates establishing Waste Load Allocations ("WLAs") and Load Allocations ("LAs") for the sources of the pollutants, to ensure that the sum of all pollutants does not exceed the TMDL.

In other words, the CWA requires each state to identify the maximum amount of each type of pollutant that a waterbody can handle without violating water quality standards. See 33 U.S.C. § 1313(d)(1)(C).

A National Pollutant Discharge Elimination System ("NPDES") permit is required for all discharges of a pollutant. See 33 U.S.C. § 1342(a). Those permits are issued by the states; 33 U.S.C. § 1342(a)(5) and (b). Under the regulations to the CWA, there can be no "new source" or "new discharger," if the discharge will contribute to a violation of water quality standards. 40 C.F.R. § 122.4(i). Thus, there cannot be a new source or a new discharger if the waterbody is a WQLS impaired waterway unless the state completes a TMDL for that WQLS beforehand. Id.

The CWA requires each state to submit to the EPA a list of WQLSs, and to establish TMDLs "not later than one hundred and eighty days after the date of publication of the first identification of pollutants under section 1314(a)(2)(D)," and from "time to time" thereafter. See 33 U.S.C. § 1313(d)(2). The EPA first identified the pollutants on December 28, 1978. See 43 Fed.Reg. 60,662. Thus, the states were required to submit to the EPA a list of WQLSs and to establish TMDLs no later than June 26, 1979. The EPA regulations require the states to make section 303(d) submissions biennially, by October 22, 1992 and by April 1 for every even-numbered year thereafter. See 40 C.F.R. § 130.7(d)(1).

These cases concern the duties of the EPA with respect to the lists submitted or not submitted by the states. The EPA is obligated to approve or disapprove the states' section 303(d) lists within 30 days. See 40 C.F.R. § 130.7(d)(2). And the EPA may approve a submission only if it meets the requirements set forth in paragraphs 1 and 2 of section 303(d) of the Act. Id. According to plaintiffs, the EPA has a nondiscretionary duty to establish TMDLs for the identified WQLSs if a state does not meet the requirements of the CWA. See 33

U.S.C. § 1313(d)(2); 40 C.F.R. §§ 130.2(g), (h) and (i) and 130.7(d)(2).

### Allegations Regarding Waters in California

Plaintiffs bring this action against the EPA under the authority of 33 U.S.C. § 1365(a)(2). That section allows a citizen's suit against the EPA for an alleged failure of that agency to perform any act or duty "which is not discretionary" with the EPA. *Id.* Plaintiffs allege that the EPA has failed to perform such duties. *See Alaska Center for the Environment v. Browner,* 20 F.3d 981 (9th Cir.1994).

The essence of plaintiffs' complaint is that California has failed to establish TMDLs for most of its polluted water bodies. More specifically, plaintiffs assert that California's lists of its WQLSs did not include the TMDLs as required by the CWA. *See* SAC ¶¶ 55–57. The EPA has allegedly taken no action or has approved defective TMDL lists for the WQLSs. *See* SAC ¶¶ 59–61. Plaintiffs contend that as a result of California's failures under the CWA, the EPA had and has a non-discretionary duty to establish TMDLs for the WQLSs within California. And plaintiffs assert that the EPA also has a duty to revoke California's NPDES permit-issuing authority until such time as California complies with the CWA.

The record is clear that the EPA has approved some of California's lists, or has issued some documents defining TMDLs for several of California's waterbodies. The EPA has also entered into consent decrees relating to the establishment of TMDLs in several regions of the state. On May 4, 2000 the EPA issued a report regarding the California's TMDL program. That report is discussed in more detail below.

The SAC in C–00–0132 makes four claims for relief. The first alleges that the EPA has failed to disapprove of Califor-

nia's inadequate section 303(d) submissions. The second alleges that the EPA has failed to establish TMDLs for California. The third alleges that the EPA has failed to incorporate WLAs into all NPDES permits in California. The fourth alleges that the EPA improperly approved California's submissions for two of its waterways. In addition to asserting that the EPA has violated the CWA, plaintiffs also contend that the EPA's actions or failures to act are violations of the Administrative Procedure Act; 5 U.S.C. § 706 (the "APA").

The SAC asks for declaratory and injunctive relief. Plaintiffs' present motion for summary judgment deals only with the issues of liability, and not with remedies. But because the claims of the complaint all seek equitable relief, the issues of liability and remedy are not so neatly divided. Defendant EPA's cross motion in essence seeks a summary judgment of no liability on all four claims.

This type of litigation is not unique to California or to this district. Similar issues, if not identical in their facts and their procedures, have arisen in the state of Alaska and have been addressed by a district court and the Ninth Circuit; *Alaska Center for Environment v. Browner,* 20 F.3d 981 (9th Cir.1994) (ACE III); 796 F.Supp. 1374 (W.D.Wash.1992) (ACE II); 762 F.Supp. 1422 (W.D.Wash.1991) (ACE I). Similar issues have also arisen in two other states in this circuit. *Friends of the Wild Swan v. U.S.E.P.A.,* 1999 WL 33229980 (D.Mont.1999), now on appeal to the Ninth Circuit; and *Idaho Sportsmen's Coalition v. Browner,* 951 F.Supp. 962 (W.D.Wash.1996). Similar cases from other states are: *Natural Resources Defense Council v. Fox,* 909 F.Supp. 153 (S.D.N.Y. 1995) (NRDC I); 30 F.Supp.2d, 369 (S.D.N.Y.1998) (NRDC II); 93 F.Supp.2d 531 (S.D.N.Y.2000) (NRDC III); *Hayes v.*

*Browner,* 117 F.Supp.2d 1182 (N.D.Okla. 2000); *Sierra Club v. Hankinson,* 939 F.Supp. 865 (N.D.Ga.1996) *Sierra Club v. Browner,* 843 F.Supp. 1304 (D.Minn.1993) *Sierra Club v. U.S. E.P.A.,* WMN 97–3838 (D.Md.2000); *Scott v. City of Hammond,* 741 F.2d 992 (7th Cir.1984) (arising from Illinois and Indiana).

### Procedural Issues

There are several important procedural points which this court must consider in its analysis of the substance of these motions.

First, the allegations of the SAC and the parties' motions must be considered under both the Clean Water Act and the Administrative Procedure Act. Plaintiffs sue under both statutes. And this court's jurisdiction and powers are different under each. Under the CWA, plaintiffs must establish that the EPA has failed to perform a non-discretionary duty. While under the APA, plaintiffs must establish that the EPA either failed to act or took inadequate action in violation of 5 U.S.C. § 706. Under that section, plaintiffs must establish (1) that the EPA's actions were "arbitrary and capricious" under Section 706(2)(A), or (2) that the EPA "unlawfully withheld" or "unreasonably delayed" its actions under Section 706(1). The standards of analysis are different under those statutes.

It is also important that the relief sought in this action is entirely declaratory and injunctive relief. No damages are sought. This court must therefore be concerned with what is or what is not being done presently. The past failures of the EPA to take action or to act adequately are of course *relevant* to the present circumstances. But the primary time-frame for the analysis of the need for declaratory or injunctive relief is the *present* level of performance by the EPA of its statutory duties. This point was noted by the district court in *NRDC III,* 93 F.Supp.2d at 536.

The present level of performance of their statutory duties by both the state of California and the EPA is described in the EPA's report of May 2000, U.S. EPA Region 9, California TMDL Program Review (2000). Plaintiffs assert that the report is inadmissible hearsay. But the report is a part of the administrative record of the EPA, which the court must analyze in its review of plaintiffs' claims under the APA. It also identifies the actions and inactions of the EPA which are being attacked under the CWA. And it is admissible evidence of the functioning California's TMDL program at the present time, which is the relevant time for consideration of equitable relief. The district court in New York considered a similar document, an agreement between the state of New York and the EPA, in evaluating whether injunctive relief was appropriate; *NRDC III,* 93 F.Supp.2d at 549.

### Does EPA Have A Non–Discretionary Duty To Establish TMDLs For Waters in California?

The issue that is central to plaintiff's first, second and third claims of the SAC is whether the EPA has a non-discretionary duty to establish TMDLs for California's waters, because of California's alleged failures to do so in compliance with the CWA. The parties' cross motions focus on this key issue. The issue arises from section 303(d) of the CWA, and primarily subsection 303(d)(2); 33 U.S.C. § 1313(d)(2). That subsection reads as follows:

Each state shall submit to the Administrator from time to time, with the first such submission not later than one hundred and eighty days after the date of publication of the first identification of pollutants under section 1314(a)(2)(D) of this title, for his approval the waters

identified and the loads established under paragraphs (1)(A), (1)(B), (1)(C), and (1)(D) of this subsection. *The Administrator shall either approve or disapprove such identification and load not later than thirty days after the date of submission. If the Administrator approves such identification and load, such State shall incorporate them into its current plan under subsection (e) of this section. If the Administrator disapproves such identification and load, he shall not later than thirty days after the date of such disapproval identify such waters in such State and establish such loads for such waters as he determines necessary to implement the water quality standards applicable to such waters and upon such identification and establishment the State shall incorporate them into its current plan under subsection (e) of this section.*

33 U.S.C. § 1313(d)(2) (emphasis added).

The statute is silent as to what the EPA's obligations are if a state fails to make a required submission. *See ACE I,* 762 F.Supp. at 1425. And the statute is silent as to the consequences if a state's submissions are made, but are arguably not in conformity with the CWA. The statute says only that the EPA must approve or disapprove of the state's submission within thirty days. As to the EPA's alleged obligation to itself establish a state's TMDLs, the statute says that such an obligation exists only "if the [EPA] disapproves" of the state's submissions; section 303(d)(2).

Plaintiffs contend that the EPA's duty to establish TMDL's for a state is triggered by either the failure of the state to submit a listing, or by the state submitting an inadequate listing.

The first case to conclude that the EPA has such a duty under the CWA if a state fails to submit any TMDL lists was the Seventh Circuit's decision in *Scott v. City of Hammond,* 741 F.2d 992 (7th Cir.1984). *Scott* was a citizen's suit against the EPA for failure to prescribe TMDLs for pollutants discharged into Lake Michigan, after Illinois and Indiana had failed to do so. Because of the lengthy absence of *any* submissions by the states, the Seventh Circuit concluded that the EPA had an affirmative duty to treat the states' inactions as a "constructive submission," warranting the EPA's response under subsection 303(d)(2). *Id.* at 996–97. The court held,

> We believe that, if a state fails over a long period of time to submit proposed TMDL's, this prolonged failure may amount to the "constructive submission" by that state of no TMDL's. Our view of the case is quite simple, and tracks the statutory scheme set up by Congress ... The allegation of the complaint that *no TMDL's are in place,* coupled with the EPA's admission that *the states have not made their submissions,* raises the possibility that the states have determined that TMDL's for Lake Michigan are unnecessary ... (T)hen the EPA would be under a duty to either approve or disapprove the "submission."

*Id.* (emphasis added).

The *Scott* court also reasoned that

> [W]e cannot allow the states' refusal to act to defeat the intent of Congress that TMDLs be established promptly—in accordance with the timetable provided in the statute. In addition, to construe the relevant statute [any other way] would render it wholly ineffective. There is, of course, a strong presumption against such a construction.

*Id.* at 998. Thus, according to *Scott,* where a state (1) *fails to submit a single TMDL* (2) for *a sufficiently long period of time,* the EPA has a non-discretionary duty to act and to define the TMDLs itself.

In *ACE I,* a district court in this circuit adopted the Seventh Circuit's principle of constructive submission, and concluded that Alaska had constructively submitted a list of no TMDLs because it had failed to submit, in a period of more than a decade, *even one TMDL.* 762 F.Supp. at 1427. The *ACE I* court, however, explicitly refused to define a test for *when* a state has "constructively submitted" a list of no TMDLs:

> The court finds that § 303(d) of the CWA does set out a nondiscretionary duty on the part of the EPA for promulgation of TMDLs in the face of state inaction.... The court need not make a broad, generic determination of the point in time at which a state's inaction may be deemed a "constructive submission." *However, there could hardly be a more compelling case for finding a "constructive submission" than under the facts of this specific case. The court therefore finds that the State of Alaska has effectively created a "constructive submission" of no TMDLs over the past eleven years.* The EPA is required, therefore, to initiate its own process of promulgating TMDLs, including any and all necessary steps needed to effectively identify the appropriate waterbodies at issue....

*See ACE I,* 762 F.Supp. at 1429 (emphasis added).

The Ninth Circuit in essence affirmed that decision in *ACE III.* The circuit court cited with approval the decision of the district court on the liability issue:

> The record before the district court showed that the state of Alaska had never submitted any TMDL's to the EPA, and that EPA had done nothing to establish any TMDL's. Relying on [*Scott* ], the district court held that the state of Alaska's failure is to submit the TMDL's for over a decade amounted to a 'constructive submission' of 'no

TMDL's,' thereby triggering a mandatory duty on EPA's part to promulgate TMDL's.

*ACE III,* 20 F.3d at 983. The court also noted that in that appeal the EPA had not challenged that conclusion of the district court. *Id.* at 984.

In the present case, plaintiffs similarly contend that there has been a constructive submission of no TMDLs by California, which triggers the EPA's duties under section 303(d)(2).

■ Under the *ACE* decisions, it is established law in this circuit that the EPA has a duty to act if a state does *nothing* with respect to submission of WQLS and TMDL lists, and in such a circumstance a district court can compel the EPA to perform its duties under subsection 303(d)(2).

■ But that statement of the law does not control the facts and the resulting issue in this case. The issue here is whether this court should exercise its equitable power to compel the EPA to take action when: (1) the state of California did file some WQLS lists and some TMDL lists (albeit allegedly late, and some lists with no or inadequate TMDLs); *and* (2) the EPA did take some action on California's submitted lists (although allegedly inadequate); *and* (3) the EPA is *now* taking steps with the state of California to bring the state's TMDL program into compliance with the CWA.

There is no doubt that the EPA's enforcement of the TMDL program has historically been negligent at best. This has been noted in several reported decisions; *Pronsolino v. Marcus,* 91 F.Supp.2d 1337, 1353–54 (N.D.Cal.2000); *NRDC II,* 30 F.Supp.2d at 373–74; *NRDC III,* 93 F.Supp.2d at 533, 536–37; *Hayes v. Browner,* 117 F.Supp.2d at 1187–88, 1190. Indeed, the EPA's laxity has been con-

ceded by the EPA in this action; *see* defendant's brief of June 6, 2000, pp. 4–6.

But this court must examine the *present* state of the record regarding California's and the EPA's compliance with the CWA. That record establishes that this is not a case of a total failure to act, by either the state or the EPA. A few examples from the record: California has established TMDLs for the Santa Ana River and for the Laguna de Santa Rosa; plaintiffs contend that both are inadequate, but lists were filed and approved. California has established TMDLs for Salt Slough, Upper and Lower Newport Bay, and for San Diego Creek. In 2000 California established several other TMDLs. California also in effect established TMDLs in connection with its development of some so-called "basin plans," and in connection with consent decrees.

The May 2000 report of the EPA on California's TMDL Program Review provides a comprehensive review of the TMDL program in California, its successes and shortcomings, and the concrete plans for the future. It demonstrates that the EPA works with California in the development of TMDLs, even before California actually submits such lists to the EPA. According to the report, more than 46 TMDLs have been completed for waters on California's lists. *Id.* at 3. The report is also quite frank about past deficiencies: "The State initiated work on most of the targeted TMDLs, but adopted and submitted very few of these TMDLs in the time frames projected in the 1992, 1994, and 1996 schedules." *Id.* at 9.

However, more to the point regarding plaintiffs' request for injunctive relief, the report demonstrates that California has established a schedule for completing all TMDLs for waters on its 1998 section 303(d) lists within the next 12 years. *Id.* at 3. This schedule is consistent with EPA's national policies concerning TMDL completion times. The report is optimistic that the times set forth in California's present schedules are reasonable and will be followed. *Id.* at 20. Specifically, "[t]he State and EPA have workplan agreements specifying a minimum number of TMDLs to be completed by each Regional Board.... In addition, the State and EPA allocate grant funds to support TMDL development based on an agreement that the State will complete and deliver at least one TMDL for each $125,000 of federal funds provided." *Id.* at 11. According to the report, more than 200 TMDL studies are currently underway in California. *Id.* The current schedules include TMDLs for more than 98% of the listed waterbodies. *Id.* at 13.

The report summarizes that "the State's TMDL schedule is comprehensive in its coverage," and that California will meet its goal of completing all TMDLs by 2011. *Id.* Moreover, California's plan for TMDL compliance follows the CWA's goals of prioritization —— the worst waterbodies will be handled first. The only significant problem articulated in the report is that the EPA is concerned that some Regional Boards did not establish an even pace of TMDL development in their schedules, and elected instead to "backload" their schedules. *Id.* at 15. Nonetheless, the EPA found this decision reasonable, and decided not to question too deeply the state's decision to backload in a setting where the state has the primary responsibility to act. The report also shows that California is dedicating substantial resources to its TMDL program. Specifically, California has $7 million annually allotted to TMDL funding. *Id.* at 3.

The report concludes that "California has approved a substantial number of TMDLs. The State has demonstrated its resolve to develop TMDLs for all the waters on its Section 303(d) list.... EPA has

demonstrated its commitment to actively assist and oversee State TMDL development efforts...." *Id.* at 20. Such plans are similar to the New York memorandum of understanding approved in *NRDC III.*

Plaintiffs cite to Exhibit 21 of their request for judicial notice. That is a 1998 letter, which indeed seems inconsistent with some statements in the EPA's report. However, the inconsistencies may be more superficial than real; and it does not present a reason to ignore the later May 2000 report.

 Plaintiffs make one further argument in support of their constructive submission claim. Plaintiffs argue that the EPA's duty to implement a TMDL plan for California was triggered at the first moment that California failed to comply with the statute, and that EPA's duty is not extinguished by later compliance by the state. In other words, according to plaintiffs, California constructively submitted no TMDL lists in the early years of the program, and notwithstanding all later compliances and corrections the EPA is required to set California TMDLs because of California's past non-compliance.

But that argument ignores the fact that this complaint seeks present injunctive relief. And plaintiffs incorrectly rely on *Coalition for Clean Air v. So. Cal. Edison Co.,* 971 F.2d 219 (9th Cir.1992), as support for their argument. In *Coalition for Clean Air,* the Ninth Circuit decided a different issue. The court interpreted a provision of the Clean Air Act that read: "The Administrator *shall promulgate a Federal implementation plan* at any time within 2 years after the Administrator ... finds that a State has failed to make a required submission or finds that the plan or plan revision submitted by the State does not satisfy the minimum criteria established [by law], " *id.* at 223. The language of that statute required the Administrator to promulgate a federal plan

within two years, and that duty cannot be extinguished by future compliance. *Id.* at 224. However, under the CWA at issue here, "[t]he Act is silent as to the nature of the EPA's obligations if a state ... fails to make any initial submission at all." *Ace I,* 762 F.Supp. at 1425. That *statute* does not state that the EPA has to act if there is no initial submission. Instead, courts have inferred that the EPA must act after there has been a "constructive submission" of no TMDLs. But a constructive submission occurs only if the state fails to submit any TMDLs *and* has no plan to remedy the situation.

There has been no constructive submission here, because California has submitted some TMDLs and the EPA has acted upon them. The past failures of California did not automatically trigger a duty of the EPA to act, and do not require an injunctive remedy now that California has taken action to correct its past failures. The constructive submission doctrine requires the court to look at the present time, or at least at a span of time, and not just at individual points of time in the past. This court agrees with *NRDC III,* 93 F.Supp.2d at 536:

> First, plaintiffs make frequent reference in their pleadings to the long history of failure by EPA and New York State to perform their duties under the Clean Water Act. Although evidence of this sort may be relevant to the reliability of these entities' promises of future compliance, plaintiffs are wrong to imply that recent efforts by EPA at compliance are per se insufficient to discharge EPA's statutory duties because of the agency's past failings. *As the Court's sole power in this context is to require EPA to conform its present conduct to the law, EPA's past noncompliance is irrelevant to the question of agency's present compliance, and to whether the Court will grant the narrow relief prescribed by the*

*CWA and the APA.* Plaintiffs did not, and could not, acquire rights by virtue of EPA's past failings, and the Court cannot, accordingly, provide any relief that goes beyond ensuring EPA's present compliance with statutory mandates. (emphasis added)

In summary, this court finds and concludes that California and the EPA have both been doing something about TMDLs, albeit not as rapidly as contemplated by the passage of the CWA. But in ·view of the record, this court cannot find that there have been no filings by California and no actions by the EPA. The record does not support plaintiffs' contention that there has been a constructive submission of no TMDLs. And the EPA has not failed to perform non-discretionary duties under section 1313(d)(2). Although the EPA has not acted with the speed or on the timetable which Congress envisioned, it has acted with sufficient diligence that this court's interference with an injunctive remedy is not appropriate.

### The EPA's Duties Regarding NPDES Permits

The third claim for relief asserts that the EPA has failed to incorporate WLAs into all NPDES permits issued in California. Plaintiffs state that this claim is a corollary to their first and second claims. It is also based on the CWA and the APA. In their third claim, plaintiffs are not attacking any specific permit issued in California. Rather, they are making an overall attack on EPA's oversight of California's permits and are seeking future relief.

This court is not well advised by the briefing on this claim. The court is not instructed about the EPA's powers over state-issued permits, and how and where challenges to those permits are reviewed. Plaintiffs' citations to the CWA do not on their face pertain to the NPDES program, and the court cannot conclude from the citations that the CWA imposes any duty on the EPA to modify state-issued permits. Indeed, the issuance of such permits appears to be governed by a separate and detailed section of the CWA; 33 U.S.C. § 1342. But that section's application to this action is not adequately explained by the briefing. And section 1369(b)(1)(D) appears to vest jurisdiction over challenges to the state permit program in the courts of appeal rather than in the district courts.

This court is not holding that there may not be a valid claim regarding the EPA's control over NPDES permits under a properly plead complaint. But this complaint is not sufficient for that purpose. Analysis of such an allegation will have to be for another day, or perhaps it will be raised in one of the other cases in this series.

For purposes of resolution of the present cross motions, the court accepts plaintiffs' statement that the third claim is a corollary to the first and second. As such, it must be denied for the same reasons. That is, the EPA does not now have a non-discretionary duty to establish TMDLs for California's waters. And plaintiffs' assertions do not justify the issuance of injunctive relief.

### Has The EPA Violated The Administrative Procedures Act?

Plaintiffs also invoke the jurisdiction of this court under the APA. Plaintiffs contend that the EPA's failure to act, or to take adequate action, violates section 706 of the APA. Plaintiffs rely on both the theory of "arbitrary and capricious" actions by the EPA (§ 706(2)(A)), and alternatively that the EPA "unlawfully withheld" or "unreasonably delayed" action (§ 706(1)). The analysis of plaintiffs'

claims under the APA must be distinct from the analysis under the CWA.

### (1) Arbitrary and Capricious

 In order to uphold an agency's discretion, section 706(2)(A) requires a finding that the choice made by the agency was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (quoting 5 U.S.C. § 706(2)(A)); (*Citizens to Preserve Overton Park* subsequently overruled on other grounds by *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). *See also Dioxin/Organochlorine Ctr. v. Clarke,* 57 F.3d 1517 (9th Cir.1995). The court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. 814. And "[a]lthough this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* In other words, an agency action can be set aside only "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *see also Beno v. Shalala,* 30 F.3d 1057, 1073 (9th Cir.1994). Plaintiffs bear the burden of overcoming the presumption of the validity of the EPA's actions. *See, e.g., Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981).

 In considering APA claims with respect to CWA issues, courts have examined the record to determine if there was a violation by the EPA even where a state submitted some TMDLs. This compares with the analysis under the CWA, where courts have declared a constructive submission if the state has submitted no TMDLs at all.

The decision of the district court in *NRDC III,* which analyzed a state's inadequate TMDL submissions under the APA, is again instructive here. That court granted defendants' motion for summary judgment on plaintiffs' APA claim, concluding that, "[t]he Court cannot say, however, based on the administrative record, that EPA has acted arbitrarily or capriciously in concluding that New York's participation has been sufficiently active and meaningful to obviate resort to" judicial intervention under the APA. *NRDC III,* 93 F.Supp.2d at 542. New York had not submitted any TMDLs to the EPA prior to the filing of the suit. The record did indicate that New York was actively engaged in the preparation of TMDLs as early as the mid–1980s, and maintained close communications with the EPA during that time regarding its progress. Even the EPA Administrator acknowledged that "the TMDL program was consciously neglected by EPA until recent years, while resources were dedicated to other components of EPA's water quality control efforts under the CWA." *See NRDC III,* 93 F.Supp.2d at 539 (quoting Testimony of Carol Browner, Feb. 23, 2000, before the Senate Committee on Agriculture).

The *NRDC III* court noted that New York and the EPA had entered into a memorandum of understanding, which established an eight-year schedule for promulgation of TMDLs for all 129 WQLSs included on the state's 1996 section 303(d) list. After the agreement was entered into

and during the pendency of the lawsuit, New York amended its WQLS list by adding almost 300 more polluted waterways. After the state amended the list, the EPA and New York agreed to extend the timetable to complete the TMDL lists.

As noted by the *NRDC III* court, the EPA reevaluated the total TMDL program, and proposed changing the time frames for compliance, giving the states nearly 15 years to submit TMDL lists for all of their WQLS waterways.

> While EPA's early record on TMDLs is far from admirable, it is clear that EPA is now taking its responsibilities in New York very seriously and taking reasonable strides to bring the TMDL program to fruition. At present, EPA is working closely with New York State to develop TMDLs for each of the State's § 303(d) listed waterbodies, and to honor its obligations under the CWA. Moreover, as noted above, EPA plans to implement extensive changes to the TMDL program later this year.

*Id.* at 541.

In sum, that court concluded that such future planning was sufficient, and rejected plaintiffs' request for judicial oversight:

> While plaintiffs are correct to point out that New York's promises of future action are by themselves insufficient to avoid declaration of a "constructive submission," the Court considers the future plans established by New York and EPA to be an important sign, informed by New York's diligence in the past, that the intrusive injunctive remedies requested by plaintiffs are not warranted here .... The Court cannot conclude, based on the record before it, that EPA has acted arbitrarily or capriciously, or otherwise contrary to law, in declining to declare a "constructive submission" by New York of no TMDLs.

*Id.*

A contrary decision is *Sierra Club v. Hankinson,* 939 F.Supp. 865 (N.D.Ga. 1996). That court also analyzed whether the EPA had acted arbitrarily or capriciously under the APA by failing to declare a constructive submission of Georgia's TMDL lists. The court there agreed with plaintiffs, and concluded that there was a constructive submission of no lists. *Id.* at 872. At the time of the decision, Georgia had completed just two TMDLs, both of which were completed after the case was filed. Georgia was working on a plan to develop two TMDLs for each of Georgia's fourteen major river basins by the year 2005. The court noted that Georgia did not have any current plans to develop TMDLs for all WQLSs as required by CWA. "Defendants state that Georgia has promised to develop approximately 25 complex TMDLs for its major river basins within the next eight years. At this pace, Georgia will take over a hundred years to complete TMDLs for the approximately 340 WQLSs identified on the 1994 WQLS list." *Id.* at 871. The court therefore concluded that the "EPA's failure to disapprove of Georgia's inadequate TMDL submissions was arbitrary and capricious in violation of the [APA] ...." *Id.* at 872.

The record in our present case is much closer to *NRDC III* than to *Hankinson.* As discussed above, California has supplied some TMDLs, and did so prior to this litigation. California and the EPA are working together to meet the goals for identifying TMDLs for all of the state's WQLS waterways, and funding to do so has been agreed upon.

### (2) "Unlawfully Withheld" or "Unreasonably Delayed"

Section 706(1) grants this court jurisdiction to "compel agency action un-

lawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The prongs of section 706(1)— that is, "unreasonably delayed" and "unlawfully withheld"— are mutually exclusive. *See Forest Guardians v. Babbitt*, 164 F.3d 1261, 1272 (10th Cir. 1998). An agency action may be deemed "unreasonably delayed" where the governing statute does not require action by a date certain, whereas an action is "unlawfully withheld" if an agency fails to meet a clear deadline prescribed by Congress. *See id.*

■■■ However, both prongs require that the agency have a statutory duty in the first place. *See Madison–Hughes v. Shalala*, 80 F.3d 1121, 1124 (6th Cir.1996). Here, as discussed above, the EPA has no present duty to define the TMDLs for California under the CWA, because there has not been a constructive submission of no TMDLs. As stated in *NRDC III*, 93 F.Supp.2d at 544:

> Of course, the Court can only compel EPA to take an action that it is under a duty to perform. See generally 5 U.S.C. § 706. The Court has held, both on plaintiffs' CWA claim and on their § 706(2) APA theory ... that EPA was entitled to conclude that its duty to declare a "constructive submission" of no TMDLs had not been triggered. As the Court finds that EPA is not presently under a duty to declare such a "constructive submission," it is illogical, and perhaps therefore unnecessary, to consider whether EPA unreasonably delayed such a declaration.

This court also concludes that the EPA has not violated the APA because of its alleged failure to establish TMDLs for waters within the state of California.

### Consistency With Other Decisions

This court believes that its decisions are consistent with, or distinguishable from, other cases which have addressed the EPA's TMDL duties under the CWA and the APA, which cases are discussed above. And *see also Sierra Club v. EPA*, No. WMN–97–3838 (D.Md.2000) (granting motion to dismiss); and *Sierra Club v. Browner*, 843 F.Supp. 1304 (D.Minn.1993) (denying plaintiff's claim of constructive submission). However, two other district court cases in this circuit merit discussion:

In *Friends of the Wild Swan, Inc. v. EPA*, 130 F.Supp.2d 1184 (D.Mont.1999), the district court granted summary judgment against plaintiffs' claim under the CWA based upon their assertion of a constructive submission. However, the court granted plaintiffs' motion for summary judgment under the APA, finding that the EPA had acted arbitrarily and capriciously in not disapproving of the state of Montana's inadequate submissions of TMDLs. However, it appears from the orders in that case that California has more substantially complied with the CWA, and that Montana did not have the commitments with the EPA and the funding for the future that California does in this case.

In *Idaho Sportmen's Coalition v. Browner*, 951 F.Supp. 962 (W.D.Wash. 1996), arising out of the state of Idaho, the court rejected the constructive submission analysis. The court did conclude, however, that the TMDL plan of Idaho which had been approved by the EPA, was arbitrary and capricious and should be remanded to EPA.

Each of the relevant cases around the United States is fact-intensive. And the results have depended, at least in part, on the degree of the states' attempted compliance with TMDL requirements, the EPA's review of the states' filings, and commitments for the future. Except where the states made no filings at all, the courts of this circuit have consistently rejected the "constructive submission" analysis under the CWA. Some courts have found that the

EPA acted arbitrarily and capriciously under the standards of the APA. But again, each decision was fact-intensive. And this court concludes that California's and the EPA's compliance with their responsibilities, together with their mutual plans for future compliance, have not risen to the level of an APA violation.

The court therefore GRANTS defendant's motion for summary judgment as to claims one, two and three, and DENIES plaintiffs' motion for summary judgment. On the last page of their reply brief, plaintiffs ask for additional discovery. However, the request does not comply with the requirements of FRCP 56(f), as it does not specify what discovery is needed and why. Indeed, the court concludes that the above decisions can and should be made without the necessity for requested discovery.

### The EPA's Approval of Two Specific TMDLs

Both parties make cross-motions for summary judgment on claim four of the SAC, which alleges that the EPA's approval of two specific TMDLs, for the Santa Ana River and the Laguna de Santa Rosa, were in violation of section 706(A)(2) of the APA. No specific mention is made of the CWA, but that statute remains as the source of the EPA's duties to act or not act under the APA.

The issue is the adequacy of the TMDLs for those two waterbodies. Plaintiffs contend that as a matter of law the TMDLs were insufficient, and thus the EPA improperly accepted them under the APA. Defendant contends that the TMDLs were sufficient as a matter of law.

Defendant also contends that plaintiffs have no standing to pursue this claim, because they have not submitted evidence that any of their members were in fact injured by those allegedly inadequate TMDLs. Plaintiffs have responded by submitting the declarations of some of their members to show an actual injury. But defendant still disputes their adequacy. Defendant apparently does recognize that private plaintiffs can challenge the approval of specific TMDLs under the APA. *See, e.g., NRDC III,* 93 F.Supp.2d at 550.

The CWA sets forth several elements required in a TMDL. They include: (1) the TMDL must target a WQLS (§ 1313(d)(1)); (2) the TMDL must address a pollutant that has been identified by the EPA as suitable for TMDL calculation (§ 1313(d)(1)(A)); (3) the TMDL must be created in accordance with California's section 303(d) list priorities (§ 1313(d)(1)(c)); (4) the TMDL must contain a TMDL calculation (§ 1313(d)(1)(A)); (5) the TMDL must contain a specific allocation of the WQLS's loading capacity (40 C.F.R. § 130.2); (6) the TMDL must contain a margin of safety (§ 1313(d)(1)(C)); and (7) the TMDL must account for seasonal variations (§ 1313(d)(1)(C)).

The court believes that it presently has insufficient information to resolve the issues as to these two challenged waterways. In a case challenging the adequacy of a specific TMDL, this court must be provided with more information in order to examine the elements cited above to see if the challenged TMDLs satisfied the statutory requirements. And judging from the requested factual submissions in the related cases, that information is likely to be very extensive, detailed and technical. The court may well consider the use of a special master to assist it in that task.

The court therefore now simply notes its understanding of the parties' contentions for future consideration.

### (1) Santa Ana River TMDL

Plaintiffs contend that the Santa Ana River TMDL is deficient in several respects.

First, plaintiffs point to a 1991 staff report that concluded that California's proposed TMDL for the Santa Ana River did not meet applicable water quality standards. In response, defendant argues that the 1991 staff report was ultimately superseded by the 1994 submission to the EPA, and therefore the conclusion in the 1991 report is irrelevant. Plaintiffs reply that the 1994 submission adopted the 1991 report in whole, and that it is dispositive on the inadequacy of the TMDL.

Second, plaintiffs note that the 1994 submission did not assess the maximum daily load of nitrogen that the water segment could accommodate. According to plaintiffs, that violated section 1313(d)(1). According to defendant, the report does set forth maximum discharge volumes. However, the court is uncertain as to whether those discharge volumes are defined in the required terms of maximum daily loads.

Third, plaintiffs note that the report does not contain a discussion of the appropriate margin of safety or seasonal variations that could affect the daily load, violating section 1313(d)(1)(C). Defendant contends that the report does concern itself with the margin of safety. However, as plaintiffs note, if the TMDL report does not properly set forth maximum daily loads, one cannot tell what standard was used to calculate the margin of safety.

Finally, the parties dispute whether the report is inadequate because it does not address sources of nitrogen other than from wastewater treatment facilities. According to plaintiffs, the CWA required the report to consider non-point sources known to discharge pollutants. Defendant's response is that plaintiffs fail to present any evidence that there are non-point source pollution discharges in the Santa Ana River. There appears to be a question of fact as to who is right on that claim.

### (2) *Laguna de Santa Rosa TMDL*

On March 21, 1995 California submitted to the EPA the North Coast Regional Water Quality Control Board's Waste Reduction Strategy for the Laguna de Santa Rosa. Plaintiffs contend that this report does not meet the statutory definition of a TMDL, and that the EPA's decision to accept the report must therefore be considered arbitrary and capricious.

The dispute here concerns California's decision to measure the maximum load *seasonally* rather than on a *daily* basis. Plaintiffs contend that this violates the language of the statute, which requires a daily load calculation. *See* 33 U.S.C. § 1313(d)(1)(C). Moreover, plaintiffs contend that the report contemplated a phased approach for the elimination of pollutants (i.e., interim reduction targets), which is allegedly improper under the CWA.

Defendant supports the seasonal, rather than daily, load measures because the waterbody here was affected seasonally, rather than on a daily basis, by storm conditions. And according to defendant, the phased approach was appropriate under the EPA's guidelines where "there is limited data to determine how to attain WQLS and the TMDL provides for a monitoring and revision plan for review."

Does the EPA have the discretion to make such decisions? If so, was it reasonable for the EPA to approve a TMDL that was not specifically in accordance with the statute? EPA contends that it acted within its discretion because of the special circumstances of the waterbody. Plaintiffs contend that the statute establishes requirements that the EPA cannot ignore, and because it did "ignore" those provisions, the EPA's actions were in violation of the statute.

*(3) The present state of the briefing and the record*

Can these issues be resolved on a summary judgment standard, because they involve only a reading of the statutes and the reports? The court thinks not. There appear to be too many ambiguities or inconsistencies in the documents. And some of the points are scientifically technical, on which the court needs a record. Some issues appear to require evidence, or at least explanations, outside of the record. An evidentiary hearing is necessary to at least explain the records, the data, and the conclusions the parties believe should follow from them. And the present briefing does not help the court to understand and resolve the issues under a summary judgment standard.

The court therefore declines to grant summary judgment to either side on claim four.

*Conclusion*

For the reasons discussed above the court ORDERS as follows:

1. Plaintiffs' motion for leave to file a second amended complaint is granted.

2. On claims one, two, and three in C–00–0132, plaintiffs' motions for summary judgment are denied, and defendant's cross-motions for summary judgment are granted.

3. The cross-motions for summary judgment on claim four are denied.

4. A status conference will be held on March 21, 2001 at 2:00 p.m. to schedule further proceedings in the case, and to reset as necessary the schedules in C–00–0424 and C–00–1815.

IT IS SO ORDERED.